May it please the Court. Good morning, Your Honors. Fran Pratt, on behalf of Robert Hoffman. With me at Council table is Trial Counsel Keith Kimball. Your Honors, the federal CJA statute 18 U.S.C. 3006A requires a district court in an ex parte proceeding without notice to the government to grant motions for investigative, expert, or other services after finding the services necessary for adequate representation of a defendant. Trial Counsel filed a 3006A motion seeking a mental health evaluation that would enable them to investigate with expert assistance three broad areas of their case. They were looking for information to use at trial, to counter the government's arguments about the evidence. They were looking for information potentially to use at sentencing. And they were looking for information to enable them to communicate effectively with their client. In denying the motion, the district court committed reversible error when it forced the defense in contravention of 3006A's plain language to file a Rule 12.2 notice in order to obtain services under 3006A. As a result, Mr. Hoffman and his counsel were deprived of the opportunity to have assistance to which they were entitled in investigating a much broader range of issues than that contemplated by Rule 12.2. Was the motion denied or just not granted? I thought I read something in the government's brief that you never ruled on it. I believe the court effectively denied it by requiring counsel in order to file the 12.2 notice. Certainly, counsel never got the result that they wanted. Counsel did what counsel was required to do. They filed a motion stating what they wanted, why they wanted it, and the authority for it. The court ruled on it by repeatedly saying, counsel, you have to file a Rule 12.2 notice. So I believe the court denied it. But Hoffman did file a 12.2 notice initially, didn't he? He did after the court repeatedly directed him to do so. But he did so, I think, essentially, effectively under protest. He noted in response to the court's statements that they filed a 12-point notice that, Your Honor, we can't file it because we don't have the information we need to have the intent to file it. That's why we're asking under 3006A for investigative service and expert services. 3006A is written in broad terms. Investigative, expert, or other services necessary for adequate representation, that unquestionably applies to the services of a mental health expert needed by the defense to investigate an evaluated case. And the idea is to put an indigent defendant on at least a somewhat equal footing defendant as one who has the resources to hire the services that counsel needs. You know, when I was reading this transcript, I was trying to figure out what was going on. And one reading of it would be that you're talking about one thing and the judge has got 22.1 in his mind and is not making the, realizing the distinction that you're under whatever, 3006 and not 22.1. But I never saw where the defense made an effort to bring him back, to get his focus back on 3006 and that you just kind of went along with the way he was going, which was that you had to go into 22. Again, Your Honor, I think at Joint Appendix page 1202, when the court first brings up the 12.2 issue, and I'm going to, I will probably get numbers mixed up, so I apologize. He makes very clear that under the rules you have to give notice to opposing counsel if you have a question about your client's mental capacity. That is simply not what 3006A requires. No, but I never saw defense counsel say that. You know, say, no judge, you're looking at the wrong thing. We're under this other thing. What counsel said in direct response was, we do once there's a mental status defense that's going to be offered. And I don't think we know that yet. That's where the district court, I don't mean this the way it's going to sound, led astray. Because as you just read it, counsel was agreeing with the district court, sort of conditionally, sort of in part. I think that's what Judge Traxler is asking you. There was, again, you know, hindsight's always 20-20, but it would have been one thing if lawyer had said, no, Your Honor, we're not, we're nowhere near insanity yet. What we want is a 3006 assessment. We're not near insanity yet, Your Honor. But by saying, yes, once we yada, yada, yada, the judge is sort of, okay, we're talking about 12.2. Again, I don't mean that it's critical at all, at all. Judge Davis, counsel did in its written motion what they were required to do. They set out what they requested, why they were requesting it, and they set out the authority. That was enough to put the judge on notice that this was a 3006A motion, not something... No question that you teed it up correctly. We're talking about what happened in the courtroom during the hearing. There's no criticism of the written motion. And counsel, I think, did try to correct the judge. And now maybe he didn't say it as absolutely directly as he could have for record preservation purposes, but I think he did put the judge on notice that this was not a 12.2 situation. This is something that precedes 12.2. And in fact, that this was exactly why we needed the 3006A services in order to figure out if there was something that we might want to file a 12.2 notice on. So I think it might have been confusing in the ex parte motion that one of the reasons given for the 3006A was to obtain information for a possible insanity defense. Is that where you think the confusion might have come in? I think possibly, but I also think that this court's decisions have been clear that a defendant is entitled to have services to help his counsel investigate whether there is a possible mental health defense. And that's all we were asking for. We were not saying in that motion, in the 3006A motion, we are pursuing an insanity defense. We are saying we want to find out if we have one that we can present. And the judge, I think, short circuited that and went straight to the end issue. And that's the problem here. And ultimately, we never did get the services to which we were entitled to have. And so we never did get the private mental health evaluation that would have allowed us to figure out if there was a mental health defense, as well as the services for these other purposes that we had requested. Although you did file the 12.2 motion and then withdraw it. It just seems as though things got increasingly confused after that. I think that's correct. And we filed it at the insistence, at the very clear directive of the district court. And I don't think counsel could be faulted for doing what the court told it to do. We withdrew it, again, on the basis that it was filed prematurely. That we did not have the factual basis to support the filing of that notice. And that was precisely because we never had the opportunity under 3006A to get the services to find out if we had that defense. And so I think the judge was very clearly mixed up. He was applying the wrong standard here. That is, per se, an abuse of discretion. And therefore, the judge committed error. The heavier lift for you here is, how do you get a new trial, even if the panel is inclined to agree that this could have been done better? How do you get to a new trial? That's what you're asking for, right? Actually, not quite, Your Honor. Well, that's what your brief said. We are asking for a limited remand because of the nature of the error. To do what? In order to have the evaluation that then would allow us to determine if there might have been a defense. And I would direct the Court's attention to its series of cases in Taylor, Walker, and Reason, where this is exactly what the Court did. A defendant was improperly denied psychiatric services to investigate a possible mental health defense. The Court said that the very harm is in that case. Help me understand, please, how that helps you now when the harm that you sought to avoid, and that is putting the government on notice, has occurred? Specifically, how would a limited remand cure what I understood to be your characterization of part of the prejudice? The harm is actually twofold. I acknowledge in our brief we probably did focus more on the disclosure, but we did also say in the brief that the harm was the denial of the opportunity to conduct the investigation. And 3000A certainly contemplates that this investigation is ex parte. It's without notice to the government. The fact that we may have informally said something is not the same kind of thing as the notice under 12.2. But again, I would urge the Court to look very closely at the Walker, Taylor, Walker, and Reason, because those cases lay out very nicely what the harm is and why the limited remand is the appropriate remedy. The Court acknowledges that we can't actually speculate as to what the harm is, because we weren't able to find out. So the remand is for the purposes of finding out what that harm is, and then you go from there. To the extent that the government has argued that there's no indication from the trial that Mr. Hoffman had a viable mental health defense, this Court has already rejected that line of reasoning. And I'll quote from the Walker decision at page 1195, we find this argument unpersuasive as we cannot speculate on what possible avenues of defense an adequate examination might have revealed to counsel. That's what we have here. Why did you reject, assuming you rejected it, a mandamus action pre-trial, if it was really so critical? I don't know, Your Honor, if our trial counsel ever discussed that as a possibility. I think whether it was asking for reconsideration, filing another motion, and the judge was so very clear in his ruling that we had to file the 12.2 notice, that I think trying to do anything else would have been futile. No, I never saw even an objection from defense counsel while the judge is going through what he believes is required of defense counsel. I just never saw an objection from defense counsel saying, no, Judge, we don't have to do that. We're not to that point yet. What we want is this and it's under this section. They just kind of went along with it, and if the judge is on the wrong track, he's on Chief Judge Shaster, I think defense counsel did object on page 1102 when the judge first brought up this issue by saying, we're not at that point yet. We can't file the notice because we don't have the investigation. We have to do the investigation first. But that's not the right objection. I mean, that's not pointing out that you're proceeding under a different section, that the section you're proceeding on doesn't require these things. Again, I'd go back. I think the written motion was clear on its face. And, in fact, the judge made clear its ruling when it later denied the motion for additional services under 3006A. On the very ground, the counsel had not filed the 12.2 notice, which it was erroneously being required by the court to file. So, if the court has no further questions, I will come back on rebuttal most likely. That's fine. You've got, as you know, reply time. Mr. Kresk? Good morning. May it please the Court, this Court should affirm the judgment below for two independent reasons. First, with respect to the issue of necessity for services under 3006, the defense first abandoned its first motion for expert services, and then later untimely filed a second motion for expert services after a thorough examination of Mr. Hoffman showed that he presently suffered from no major mental illness and that he had no known history of mental illness. How much time had elapsed between his arrest and this hearing? Or, I should say, the examination, the competency exam. He was arrested on December 6, 2012. The competency examination took place in May of 2013, so approximately five months. The second reason that this Court should, and wholly apart from the issue of necessity, affirm the judgment is that the defense failed to preserve the right to present a mental health defense at trial by twice failing to comply with Rule 12.2 notices provisions. Therefore they cannot show by clear and convincing evidence that they were actually prejudiced by the District Court's handling of the motion for expert services. Is that the standard, clear and convincing? Yes, it is, Your Honor. This Court so ruled in the Hartzell case. First, I'd like to start with the two motions for expert services, and I think it's important to take them one at a time. While I admit that the record is a little bit muddled, I submit Judge Dumas got it right, and I think it's very important to walk through what happened. As Ms. Pratt correctly advised, the defense filed a motion saying, we'd like expert private psychiatric services for several reasons, and they gave those reasons. What they did not give the Court was a factual basis establishing necessity for the appointment of such services which they were required to do. If the standard was, we'd like a psychiatric consultation, defense counsel would ask for it in every case. The standard is higher than that. You have to show factual necessity for such services and link that factual necessity to a legally cognizable defense in the case. That's what this Court has said in Jones and in the Fintz cases cited in our brief, and more importantly, it's what the Supreme Court noted in the Aki decision. It says that defense must make a preliminary showing that mental health is likely to be a significant factor at trial, and the need for such services must be readily apparent. Here, so when that motion is filed, we go to the April 17th hearing, and Judge Dumas at page 1107 of the Joint Sealed Appendix says to them, your motion appears to me to be insufficient because there's not a showing of necessity. Yes, you want the services, but what's the facts that would justify the Court in granting such services? And defense counsel responds to that by saying, well, Your Honor, Mr. Hoffman has made statements to us about his military career that give us great pause, that cause us concern about whether or not he can distinguish reality from fiction, whether he's delusional. And Judge Dumas correctly senses that this is a competency issue that they're really raising. That's competency, that when you're saying that he can't distinguish reality from fiction, he's delusional. So Judge Dumas asks them at page 1104 of the Sealed Joint Appendix, are you saying you're concerned about whether he's competent and able to assist you? And defense counsel answers yes. At that point, even though the record's a little bit muddled, Judge Dumas correctly pivoted to the correct decision that what was before the Court was really a competency issue, and that a private psychiatric examination isn't the proper way to assess whether or not a defendant is competent. The proper way to deal with that is pursuant to Section 4241 of Title 18 of the United States Code. If there's reasonable cause for a competency hearing, the Court orders it. And that's just what Judge Dumas did. So then, as we progress from the 17th, the next hearing, which the government gets brought into the conversation, is April 23rd. And by that point, not only did the defense not object at the prior hearing to what the Court had proposed, but by that point, the defense adopted the Court's proposal. Mr. Broccoletti told the Court at pages, I think it's 36 and 37 of the Unclassified Joint Appendix, that there's two issues. First, the defense wants a competency examination, and they want it done locally. Second, Mr. Broccoletti advised the Court that the defense was going to withdraw its Rule 12.2 notice. And it's critically important what he says there when the Court is evaluating whether or not the defense had abandoned its motion for expert services, which the government's contention is. Mr. Broccoletti says, we do not have a sufficient basis to prompt a sanity examination at this time. He conceded the lack of necessity for a private psychiatric examination at that time. And in fact, he said, we want to see what the results are of the competency exam, and we may come back to the Court later. So Judge Dumas didn't abuse his discretion in responding to that first abandoned motion for expert services, and nor did he commit error, and again, this is where the record kind of gets a little muddled, in directing the defense to file a motion for a competency exam. Now, there's three ways such exams can be initiated. The government can move forward, the defense can move forward, or the Court can sua sponte order it. In this instance, we submit there's no practical difference between the Court directing defense counsel to file such a motion, or the Court sua sponte ordering it. And as the record reflects, Judge Dumas at that time was in a month-long criminal trial with Mr. Broccoletti, so it wasn't unreasonable for him to suggest defense counsel, you get the ball rolling, file the motion, and we'll have that hearing as we did on April 23. Now, with respect to the second motion for services, the District Court correctly denied that, and that was filed July 8th. Sorry, Your Honor, yes, July 8th. He correctly denied that for both procedural and substantive reasons. As of July 8th of 2013, there was no necessity as a matter of law, because the defense had not preserved its right to present a mental health defense at trial by giving notice pursuant to Rule 12.2. So the original deadline in the case was February 28th. Following the superseding indictment, there was an extension of the motion's deadline to May 31st, and the defense again does not file a Rule 12.2 notice saying we want to pursue a mental health defense at trial. And Judge Dumas correctly decided that having not given notice, there's no necessity for expert psychiatric services because you can't present such a defense. But in that second request, the second 3006 request, wasn't defense counsel also seeking to determine a professional opinionist whether Hoffman was delusional, which again goes to the competency issue, not competency to assess rather than the defense issue? It's an interesting question, because the motion is framed in a way that we want, it's framed. It sounds like, it again goes back to sounding like a competency. Well, they said we want an expert to give us services pertaining to whether or not he was sane at the time of defense or whether there was a mental health defense, but you are absolutely correct that the factual predicate that they lay forward again is the same predicate that led to the initial competency examination, that he's delusional or he's lying or he's exaggerating about his exploits while in the U.S. Navy. So you're absolutely correct. So Judge Dumas correctly says not only procedurally are you in hot water, but substantively, we've already done that. This is what Dr. Sadoff just evaluated with respect to Mr. Hoffman. And this wasn't a run-of-the-mill competency examination that took place over a couple hours one afternoon where the defendant met with a psychiatrist. Dr. Sadoff conducted a exhaustive examination of Mr. Hoffman's mental health pursuant to the court order. The court order says, yes, you're to evaluate him for competency, but you're to look at his history and his symptoms. And Dr. Sadoff did that. He looked at two very distinct periods which sandwiched the crime. So the crime, Mr. Hoffman's dealings with the FBI are from June of 2012 through December of 2012. And Dr. Sadoff looks at a 20-year period of military personnel records of Mr. Hoffman. He looks at his evaluations, his enlistment papers, his enlistment exams, his service records, his fitness reports, 20 years of military records of Mr. Hoffman's honorable service to the United States Navy. He also looks on the other side of the crime from the date of arrest through May of 2013. So he looks at six months of jail records, which included an intake mental health assessment, an intake medical evaluation. He spoke to the jailer. He looked at daily medical assessments for Mr. Hoffman. He interviewed Mr. Hoffman over two days for eight hours. Dr. Sadoff also spoke with defense counsel. I'm exhausted just listening to you describe it. Sorry. No, no, really. I agree with you. It is a really remarkable competency report. I mean, he's done a lot of these things, and he went all the way with this. He covered the waterfront, and his conclusions, if I may just close that chapter of it out, his conclusions were that he has no known history of mental illness, which is consistent with his military service. Not just anybody gets to ride aboard nuclear submarines and operate highly technical equipment and engage in classified operations on behalf of the military. Not only did he not have a known history of mental illness, but he wasn't presently mentally ill as of May 2013. And that's significant, Your Honor, because that's just six months after the conclusion of the offense. It's not like he's doing a competency examination three years after some crime allegedly was committed. This was right on the heels of Mr. Hoffman's arrest, and that suggests that the court can draw relevance from that that not only is he not presently mentally ill, but he wasn't mentally ill during the crime. And finally, with respect to this issue of necessity, I did want to point out one last point on that, that both the, and it relates to your question, Judge Duncan, concerning what was the nature of the claim presented in this second motion. And what the defense requested was that Dr. Sadoff go back and listen to the audio tapes made of Mr. Hoffman during that six-month period when he was dealing with the FBI. And those audio tapes are in the record before the court. Both the defense and the... Did they need a motion for that? Obviously, they needed a motion. I mean, the defense needed a motion to ensure that they could pay Dr. Sadoff. But did they actually need a motion to send in the tapes? Were they under a sealing order? Were the tapes under a sealing order? No, they possessed the tapes. The statements, the defendant's statements were turned over very early in the case, well before Dr. Sadoff was involved. What the defense might argue in response is, well, he wasn't tasked with examining Mr. Hoffman's sanity at the time of the offense, therefore he wasn't given the tapes. But the defense certainly could have, if they wanted to, suggest to the court that he should listen to the tapes as well. They didn't do that. But did they need the court's permission to have him listen to the tapes? Again, hindsight's always 20-20, but my suggestion is they could have given him the tapes at the time he commenced the competency assessment, and they could have given him the tapes at the time they filed the second motion. At either point, right? Without the court's permission, with the proviso that they needed the court's permission in order to pay him to do more work. I think that's accurate, and it certainly goes to my point, which is that they had these tapes all along, and they could have brought them to the attention of Dr. Sadoff or to the district court. But what I would tell the court is, there's over 100 pages in Volume 4 of the Joint Appendix of these excerpts of the transcripts of these audio tapes. There's over 100 pages of these emails. The court can examine them for itself and determine whether there's anything in them that would have supported a mental health defense. I would submit that the reason the defense hasn't brought that to the attention of this court or to the district court is there is nothing in those tapes that shows anything but that Mr. Hoffman was rational, intelligent, oriented as to time and place, and careful about his actions. So, if I would, I'd just like to pivot to the second part of the government's argument, which is, apart from the issue of necessity, the defense cannot show that it was prejudiced because Mr. Hoffman received a fundamentally fair trial. And this claim necessarily requires proof both of compliance with Rule 12.2, as well as a factual predicate for the claim that Mr. Hoffman was severely mentally ill from June through December of 2012 when he had these interactions with the FBI, when he thought he was dealing with Russian special agents. And with respect to the procedural issue, Rule 12.2 compliance is straightforward. If you want to pursue a mental health defense, you have to give notice. And there were two deadlines in this case, the February 28th and the May 31st deadline, and the defense did not comply and give such notice. Nor did they, after Dr. Satoff submitted his report on May 31st to the court, did they come back to the court and say, well, Judge, there's something in this report that prompts us to seek to file out of time and here's good cause. Well, at least with respect to the February deadline, defense says at that point we didn't have information that would enable us to determine whether or not we wanted to pursue such a defense. So there's a response to the February 8th deadline at any rate. Well, there is a response, but the counter response would be, Your Honor, that the court permitted them to file a Rule 12.2 notice out of time. So the court was bending over backwards. Permitted is somewhat questionable. The court seemed to be pretty clear that they had to. To do what, though? To preserve the defense's ability to do what they're saying now that they were denied the opportunity to do, which was to present a mental health defense. He was bending over backwards saying, hey, if you want to make this mental health defense, file your notice. And the government didn't object when that notice was filed. They walked away from that notice. They withdrew it. But to follow up on your point, the situation had changed by May 31st because now they had a report from an expert who they suggested to the court should evaluate Mr. Hoffman. And that report, it does conclude there's no, it gives him a clean bill of mental health, but it also had things in there that the defense could have used to support a Rule 12.2 notice. And I'll just give you some examples. It said that, for example, he may be suffering from depression or he may have an adjustment disorder. And if you couple that with the statements that defense counsel is saying Mr. Hoffman was making to them, they could have filed that notice right after receiving Dr. Sadov's reports, but they slept on their rights. And the consequence of that is clear that you can't then pursue a mental health defense. Substantively, I would just conclude by noting that the failure to file that Rule 12.2 notice, it wasn't an oversight. Mr. Hoffman was represented by some of the most experienced and best defense attorneys in Hampton Roads. They made a conscious choice to defend Mr. Hoffman on the claim that he himself ceded when he went to the FBI and presented his diary and said, I was turning over classified information, but I did it to help the United States not injure it and not to help the Russians. And the defense vigorously pursued that defense at trial. They called eight witnesses. They vigorously cross-examined government witnesses. And they argued it in closing. And they did that because there wasn't a factual basis to support the defense. Let me ask you this. Under 3006A, when there's a request for these particular services, the trial judge has to make a decision if the services are necessary. When I look on page 1107 of the transcript, he says, I'm going to take this matter under advisement. I want to read some cases. He said, my initial reaction was what was in the motion certainly wasn't sufficient to appoint somebody because there's no showing of necessity which is required. You were there. I guess you were there. Is he referring there and that to the 3006 standard? Or is there some other standard being applied that was before the court? I wasn't there. But he's quoting from the language of the statute. That's what it says, that necessity is required. And what this court's cases require and what the Aki case. So it's not good enough to just come to court and say we want it. You have to show a factual basis for the request and tie that factual basis to a legally cognizable defense. And that was the problem that the defense had. They presented a competency claim. And competency isn't a trial defense. And does the government agree that their motion under 3006A was denied? No. We do not agree with that. We contend that the defense abandoned that motion as the hearing on April 23rd shows because they withdraw their Rule 12.2 notice and they explicitly tell the court we don't have a sufficient basis to present to the court to warrant a sanity examination. So they walked away from it. And every other motion that's docketed and is shown in the docket sheet is ruled upon. This one was never ruled upon and there was no finding by the district court concerning necessity because they abandoned it. Thank you Mr. Grask. Ms. Pratt. I will try to be brief. First of all, we did not abandon the 3006A motion. We never withdrew it. It was still there. The court ruled on it by forcing the defense to do something that it was not required to do at that time. Well, can you help me with the time frame on that because it's a little hard for me to follow, at least with respect to the hearing on April 23rd when Hoffman withdrew the 12.2 notice. As I understood it, it was because there was no evidence of insanity necessitating an examination and also that the withdrawal was motivated by some desire to preclude the government from obtaining a sanity. But at least on April 23rd, it does appear to me that Hoffman was walking away from the 12.2 notice and there's some indication perhaps from the 3006A. It's not entirely clear to me. Can you help me with that? The formal withdrawal of the 12.2 notice I think could be fairly characterized as abandonment but that is not what happened with the 3006A motion. One thing that I think is very important to remember is that 3006A is not limited to services that can be used only to find cognizable legal defenses. It is much broader than that. It applies to services necessary for adequate representation. But was that ever clear? On the record, it sounds as though that Hoffman is recognizing that there's no evidence of insanity necessitating an examination. Mr. Broccoletti was very careful to qualify his statements with at this time. That's the whole problem. At that time, they didn't have evidence because they hadn't had a private evaluation that would enable them. But they've withdrawn the notice that the district court gave them to understand was a prerequisite for such. That is correct. Whether you want to call it a chicken and egg situation or putting the cart before the horse, the judge was forcing them to do something that they were not required to do. I'm just speaking to what appears to be a lack of clarity and perhaps even a lack of assistance by the defendant in helping to clarify because it wasn't clear to me either that you weren't walking away from the 3006 motion request. I think that in order to characterize the 3006A motion as being abandoned, it would have needed to have been formally withdrawn. That did not happen here. That motion was still out there and at the April 17th hearing, the judge ruled on it. There was no written order, but the judge made his position very clear that he was requiring the defense to file a 12.2 notice in order to get 3006A services and that is not what 3006A requires. Ms. Pratt, I'll ask you bluntly. Is this a problem of the rocket docket? I think it could well be. I think there are a number of places throughout this. Have you encountered problems getting expert psychiatric services in other cases, generally, as your office? No, Your Honor, because we don't have to go through the court to get them. Right. But leaving that aside, the whole point of 3006A is to put indigent defendants on the same kind of footing. Are you hearing any problem? Again, I'm sort of going outside the record, but is it a concern of the CJA panel in the Eastern District that these kinds of motions are not favorably? I'm not sure that I am able to answer that. I think that this particular kind of situation comes up pretty infrequently. I think so. I think so. And most judges say, oh, you want a psychiatrist? Okay, you got a psychiatrist. Exactly. And Your Honor, you know that from your own experience. Well, my understanding is your office used to have the ability to pay for these things yourself, that you didn't have to go to court, but because of the budget crunch about this time, you didn't have the funds and so you had to come to the court to get them. That's correct. And thankfully, at least for the time being, until the next sequestration sets in, we are back at that point. You pay them yourself and you don't need to go to court. And had we had money at the time, there's no question that in our experience, we absolutely would have gotten this because we believe that this was necessary for adequate representation of our client, even if in the end it didn't provide a formal affirmative defense. Doesn't Defender Services have a fund for situations like this that they can, from Washington, provide you with funds for expert services if you've been deprived of them or denied them by the court? I am afraid, Your Honor, I think there may be, but I don't want to say for certain. I mean, this whole case is coming up simply in such an unusual posture. And I think that the court can take that into account in ruling, I hope in our favor, because this is not something that is going to become a chronic problem. This is not something that's going to open the floodgates. If I could just try to make two more points. In terms of the competency exam itself, it was limited for a very specific purpose. And yes, it was thorough. But Dr. Sadhoff was an agent. He was an agent of the court appointed for a limited purpose. And that is so completely different from what we were asking for. And then finally, in terms of prejudice, the government has mentioned the Hartzell case. That is a very, very different case from what we have here. In Hartzell, the defense was requesting additional services for use at a second trial. They had already received over 100 hours of services under 3006A before they went for the first trial. In that situation, it was absolutely fair to say there was no prejudice. There's that clear and convincing evidence of prejudice language in Hartzell that's kind of curious. It is very curious, especially when you're talking about something that has a constitutional dimension to it. And it's an abuse of discretion standard of review. I mean, clear and convincing evidence of an abuse of discretion, I'm having difficulty getting my head around that, frankly. Well, I think analytically, there are two steps. One was, did the court abuse its discretion as to the finding of necessity? And then, if that first part's met, then you get to the harm. And that's the prejudice. That's certainly my understanding of how it works. And courts can abuse their discretion a certain amount or make other, whether it's a legal error or whatever. But then the defendant does always have to prove prejudice. But here, where we're talking about an impingement on a constitutional right, I actually think that the standard's completely backwards. And that if error is found because it impinges on a constitutional right, then it really should be the burden on the government to show that there was no harm. And they can't do that here precisely because it requires them to speculate what would have happened if we had, in fact, gotten the services. So if we were to somehow grant you relief, your submission is that it would go back. You would have a psychiatrist examine your client for the purpose of assessing whether he suffered from a mental disorder over the period of his conduct, which gives rise to the offense. Is that it? The examination would not be that limited because we were requesting to find out whether there was information that went simply beyond trial purposes. We were looking for sentencing information as well. So we would like the examination to be what we should have been able to get in the first instance. And then at that point, if based on that examination, we determine that, yes, there is information. You didn't ask for a separate appointment for sentencing purposes. It was part and parcel of our original motion, Your Honor. You didn't renew that after the conviction. No, we didn't. But it was part of our original motion. So I think Hartzell is very easily distinguishable. There's also another similar unpublished case that I found just this morning, which is the Bates decision, 1998, Westlaw 131834, which in many ways is similar to Hartzell in that there was already a great deal of information on the record about the defendant's mental status. Here, we don't have that. That's why we wanted the motion. So I urge the Court to follow what it has done in the Taylor, Walker, and Reason decisions and to send this back for a limited remand for having purposes of the exam that we were improperly denied. Thank you. One last irrelevant question. Is this Nick's father y'all wanted to hire? Yes, it is. And for a number of reasons, there were, you know, we not just that connection, but I just was curious because of the name. It is. Okay. Yes. And he's done a great deal of work with our office. Okay. All right. I'll ask the Clerk to adjourn court and then we'll come down and get counsel.
judges: William B. Traxler, Jr., Allyson K. Duncan, Andre M. Davis